# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| | ) | CASE NO. 05-68721 |
| ROBIN LEE STEALEY, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) | |
| | ) | **MEMORANDUM OF DECISION** |
| | ) | **(WRITTEN OPINION)** |

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

Now before the court is debtor's Motion to Determine Value filed on January 12, 2006. Creditor Citicorp Trust Bank (hereafter "Citicorp") filed a response to the motion on February 1, 2006 and the matter came before the court for an evidentiary hearing on June 28, 2006. Mitchell A. Machan, counsel for Debtor, and Holly N. Wolf, counsel for Citicorp, appeared at the hearing. The parties were given additional time to file post-hearing summations and both parties have filed documents.

The court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district on July 16, 1984. This is a core proceeding over which the court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A), (K) or (O). Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## ARGUMENTS

Debtor's motion seeks to determine the value of her residence. Debtor filed a chapter 13 case on October 14, 2005 and seeks to "strip" the second mortgage held by Citicorp through her chapter 13 plan. The plan proposes a dividend of twenty-five percent (25%) to unsecured creditors. Debtor purports the value of the real estate is $50,000.00, while Citicorp argues that fair market value of the property is $70,000.00.[1] The issue presented to the court is a factual question: What is the fair market value of the residential real estate located at 2154 Walnut St., East Sparta, Ohio?

---

1 Citicorp had a broker's price opinion (hereafter "BPO") done in conjunction with the extension of credit to Debtor. The BPO appraisal indicates the house was valued at $96,000.00. Problems with the BPO were identified, including the fact that the appraiser did not go inside the house and the comparables were not accurate, and resulted in Citicorp soliciting another appraisal of the property.

## BACKGROUND

Debtor is the fee owner of real estate located at 2154 Walnut St., East Sparta, Pike Township, Stark County, Ohio and identified as parcels 51-00020 and 51-00019. Debtor purchased the real estate for $35,900.00[2] in 1993 directly from the owner. The one-and-a-half story, 1,264 square foot home was built in 1918 and has three bedrooms and one bath. The home was originally a log home and some of the existing log structure remains. The house is located on a 6,188 square foot lot. The Stark County auditor's fair market value of the property is $55,300.00.

Following the chapter 13 procedure utilized by this court, a chapter 13 appraisal of the real estate was commissioned by the chapter 13 trustee.[3] Thomas A. Baier (hereafter "Baier") conducted the chapter 13 appraisal of the property and valued the property at $50,000.00. Baier has been in the real estate business for forty years as an auctioneer, broker and appraiser. He is not licensed as an appraiser because it is not required and, in his opinion, the licensing that exists is pushed by lenders. He conducts one hundred to two hundred appraisals each year and has conducted multiple appraisals in Pike Township, which includes approximately ten to fifteen appraisals in East Sparta over the years. His appraisal was based on a personal inspection of the interior and exterior of the home. In his appraisal, he also used the following three comparables:

|    | ADDRESS     | SALE DATE | SALE PRICE |
|----|-------------|-----------|------------|
| 1. | 9580 Main   | 9/05      | $48,000    |
| 2. | 9373 Maple  | 10/05     | $70,400    |
| 3. | 1986 Walnut | 8/04      | $50,000    |

He testified that he tried to find comparables as close to the subject property as possible. He thought all the comparables were single family homes. Upon cross-examination, he also stated that the 9580 Main property had sold in 2006, following his appraisal, for $35,000.00.

Baier testified that the property is located on the southeast side of East Sparta, which he classified as a less desirable area of town because it is in a flood plain next to the river; it is located next to a commercial area; and the growth in East Sparta is on the northwest side of town. Baier found the overall condition of the home to be "fair." In his opinion, the entire house needs upgraded, including the floor coverings, bathroom and kitchen. He stated that there is below average deterioration and speculated there may be a log frame. With regard to Debtor's home, he stated that if he had to sell the home in 60-90 days, he would expect

---

[2] The chapter 13 appraisal indicates Debtor paid $33,500.00 for the property. The court will accept Debtor's testimony as to the price paid for the real estate in 1993.

[3] The trustee has a minimum list of three appraisers which are assigned to do appraisals. Each is compensated a flat fee of $200.00 per appraisal.

$50,000.00 would be reasonable within ten percent. He remarked about the record number of foreclosures occurring in Stark County and that property values in East Sparta, and across the county, have been declining.

Citicorp also had the property appraised. Adam J. Violet (hereafter "Violet"), a state-certified appraiser employed by The William Fall Group, a multi-state appraisal company, conducted the appraisal. He has been licensed with the state for three years but has only been employed with his current employer for approximately one year. It is unclear the amount of compensation Violet received for his appraisal, although it is clear he was paid. He has appraised properties in Pike Township, although he could not recall if he had appraised properties in East Sparta. Violet personally inspected the property and believes he spoke with Debtor's daughter during the inspection.

Violet explained his appraisal procedure and also the process he used to develop comparable sales data in the absence of strong comparable actual sales. He uses industry guidelines to make monetary adjustments to the sale price of the comparable property to bring the properties closer in identity. He used this process with all three of the comparable sales and the information is included on the Uniform Residential Appraisal Report (hereafter "URAR"). He testified that determining and calculating the adjustments is difficult, but he does the best he can under the circumstances.

Violet, like Baier, also used three comparables. The following comment was included on the URAR form regarding the comps:

> Comparables #2 & 3 exceeds (sic) the six month period due
> to a limited supply of recent comparables in the subject neigh-
> borhood. Due to a lack of bungalow style comparables usage
> of a ranch styled improvements was necessary. River view and
> flood zone adjustments were not utilized as there were (sic) no
> trackable market data to show if there is any impact on value.
> Comparables used were the best available from a very limited
> supply of comparables.

He used only comparables within East Sparta and tried to find comps with similar size and amenities. Under the industry guidelines, he generally likes comps within the past six months, but will use up to one year. In this case, because winter was just ending, not many comps were available. The best comps are those in the closest proximity with the closest sale date. The comparables he located were not truly comparable: one was forty years younger, although the effective age was high. Another comp used was older but had been updated, and most had notable size differences.

Violet's appraisal indicates the purpose of the appraisal is a "Refinance Transaction." The URAR indicates the neighborhood is suburban and stable. With regard to one unit housing trends in the area, Violet indicates property values are stable, supply and demand are in balance, and marketing time is generally 3-6 months. He stated that he knows the area of

East Sparta well.

Citicorp contested use of Baier's comparables (hereafter "comparables" or "comps"), alleging that two were foreclosure sales and multi-structure properties, so they could not be treated as comparable sales. Baier testified that, if true, multiple buildings on a lot would affect the value. He specifically stated that it would lower the value if one building was compared to the other.

With regard to the actual condition of the house, the URAR contains the following comments:

> The kitchen and bath are dated, but in working order. The subject is dated throughout and needs updated.
>
> Bedroom wall is in need of repair, front door need (sic) replacing. Estimated cost of cure is less than $500. Some dampness was noted in basement which is common for properties of this era and has minimal affect on value.

Violet stated the house was of average condition. The effective age of the house was twenty-five years. The furnace was recently replaced. Based on the sales comparison approach, Violet valued the property at $70,000.00. Based on the cost approach, he valued the property at $75,800.00.

Debtor also testified at the hearing. According to Debtor, she has made several improvements to the property since she purchased it in 1993. The upgrades include:

- changing the electrical box from fuses to breakers
- repair of the roof on the backside of the house and the garage because of leaks
- replacement of furnace

She stated that the condition was fair to poor because she has been financially struggling and has not been able to do the things that need done. Based on her knowledge, she does not believe she could sell the property for more than $50,000.00.

According to the proof of claim filed by the first mortgage holder, the balance on the first mortgage is $48,950.01, as well as an arrearage of approximately $1,400.00. Citicorp is owed $17,932.70 per the proof of claim.

## DISCUSSION

First, the court will comment on the witness testimony. While all three witnesses were credible, the court finds the testimony of Baier and Debtor to be more convincing. Baier has more experience in the Stark County real estate industry and in the East Sparta community. Additionally, Baier was able to point to more identifiable factors influencing

value than did Violet. For example, Baier knew where the growth was in the community, that this home was next to a commercial district, and that it was possibly an underlying log home. Although Violet stated he knew the East Sparta community, his testimony was not convincing on this point.

One item that seemed to be of great import between the parties concerned the comparables used in each appraisal. The URAR reflects this and remarks on the unavailability of good comps. Although Violet pointed out the shortcomings of the comps used by Baier, and there were problems with all of the comps, the court finds Baier's comps to more persuasive.

Violet made two main arguments opposing Baier's appraisal based on his selection of the comparables: it included foreclosure sales and the comps contained multi-building properties. Regarding the use of foreclosure sale data, Violet reported that foreclosure sales are generally lower in value because the properties are purchased "as is" and often sight-unseen. Although foreclosures may not reflect market value, neither party addressed the practice of many mortgage companies of bidding and purchasing their own properties in order to resell them on the open market. To this end, Baier specifically testified that one of the properties he used as a comp sold for $35,000.00, well less than the foreclosure sale price, at a private sale in the year after the foreclosure.

Concerning Violet's second point, that Baier's comps included multi-building properties, Violet stated, in his own testimony, that multi-building properties are often more valuable because of the additional income potential. Baier also supported the theory that the comp would actually be lower when he explained that if there were multiple dwellings, it would be necessary to compare one building to another rather than comparing each property to the other. After reviewing the arguments presented on Baier's comps, the court concludes that the testimony actually demonstrated that Baier's comps may have resulted in overinflating the value of Debtor's home.

Violet used a very formulaic, by the book approach to his appraisal. The court finds the approach to be more suspect and not necessarily reflective of actual market value due to the unusual circumstances. Although he used private sales, he admitted they were not comparable and pointed to the shortcomings on the URAR. Although he tried to make adjustments to the values to account for the differences, the court is left with a firm belief that such adjustments involve a high amount of unreliable speculation. Violet admits to the difficulty in this type of valuation and suggested the book value for the adjustments may not be a true indicators of the real life cost. There simply weren't enough sales of similar properties in East Sparta, a very limited area. Thus, the court finds that, while neither appraisal contains good comps, Baier's appraisal is likely to be more accurate and reliable.

Further, although Violet noticed the dampness in the basement, and had knowledge that the property was in a flood plain, he specifically stated on the URAR that he did not factor these into the value. Baier found the flood plain to directly impact value and that any growth in the area was on the other corner of town away from the river. Again, the court

must find Baier's testimony on this point to be more convincing and credible.

## CONCLUSION

Upon review of all the evidence and testimony, the court cannot reach the conclusion that Citicorp proposes: that an eighty-eight year old home, updated only to maintain its habitability and still in need of repair, has doubled in value since its purchase in 1993. The court concludes that Baier's appraisal is more credible and convincing and accepts his appraisal as the fair market value of Debtor's home. Debtor's real estate will be valued at $50,000.00.

An order will issue herewith.

/s/ Russ Kendig

Russ Kendig   SEP 2 6 2006
United States Bankruptcy Judge

**SERVICE LIST**

Mitchell A. Machan
3810 Tuscarawas St., W.
Canton, OH 44708

Holly N. Wolf
Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-4921

Toby L. Rosen
Charter One Bank Building, 4th Floor
400 W. Tuscarawas St.
Canton, OH 44702